# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| |
|---|
| In re |
| **AUSTIN X. MAHON,** |
| **Debtor** |
| **AUSTIN X. MAHON,** |
| **Plaintiff** |
| **v.** |
| **INTERNAL REVENUE SERVICE,** |
| **Defendant** |

**Chapter 13**
**Case No. 14-11575-FJB**

**Adversary Proceeding**
**No. 15-1129**

### MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

In the bankruptcy case of chapter 13 debtor Austin X. Mahon ("Mahon"), the United States of America, by and through the Internal Revenue Service ("IRS"), has filed a proof of claim for taxes, interest, and penalties totaling $269,505.78, and the Debtor has objected to that claim and demanded a refund of amounts he says he has overpaid. The matter is now before the Court on cross-motions for summary judgment. For the reasons set forth below, the Court will grant the IRS's motions as to two grounds of objection and deny Mahon's motions.

**PROCEDURAL HISTORY**

On April 8, 2014, Mahon filed a petition for relief under chapter 13 of the Bankruptcy Code, thereby commencing the bankruptcy case in which the present motions arise.

On May 5, 2014, the IRS filed a proof of claim in the amount of $329,764.23 (Claim 1-1), to which, on August 25, 2014, Mahon filed an objection. This objection was rendered moot when, on September 26, 2014, the IRS filed an amended proof of claim (Claim #1-2), this time in the amount of

$269,505.78. This total includes a secured claim for federal income taxes, penalties, and interest for tax

years 2005, 2006, and 2008 totaling $245,606.55; an unsecured priority claim for tax years 2011 and

2013 totaling $21,614.99; and an unsecured nonpriority claim for penalties on the unsecured priority

claim totaling $2,284.24.  On October 6, 2014, the Debtor filed an objection to Claim #1-2 ("the

Objection"), asserting three grounds of objection that remain unresolved.[1]

In the first, Mahon contends that, for reasons having to do with an erroneous assessment of

income taxes (and related interest and penalties) for 2002 that the IRS later abated, the IRS has not

given him proper credit for payments he made on the abated taxes, resulting in at least some of the

deficiency that constitutes the IRS's present claim (the "2002 Overpayment Count"). In the Objection

Mahon does not specify the items and amounts at issue.

In the second, Mahon contends that he filed an amended return for tax year 2008 that, if

processed, would significantly reduce the tax due for 2008, but the IRS has failed to process the return,

wrongfully he implies, and he should therefore be given credit for the reduction that the amendment, if

accepted and processed, would require (the "2008 Abatement Count"). He does not specify the nature

of the amendment, its amount, or why in his view the IRS is obligated to process it.

In the third, Mahon contends that $17,546.00 of a withholding credit for 2008 that the IRS

applied pre-petition to satisfy his 2004 income tax debt should be reapplied in full to his 2008 taxes. In

the Objection Mahon offered no basis for this demand (the "2008 Credit Count").

On account of these specific objections, Mahon demanded that the IRS be compelled to refund

all sums it owes to him. The IRS filed an extensive and detailed response in which it defended its claim

against each ground of objection and further argued that 11 U.S.C. § 505(a)(1)(B) deprives the court of

---

[1] In addition to these three, Mahon also objected to the secured status of the secured portion of the IRS's claim.
The Court has already overruled the objections to the secured status of the claim.

jurisdiction to adjudicate his claim for a refund of payments applied to his 2002 taxes, the 2002

Overpayment Count.

The Court held a non-evidentiary hearing on the Objection on December 11, 2014, following

which the Court ordered Mahon to file a brief in response to the IRS's argument under § 505(a)(1)(B)

and afforded the IRS an opportunity to file a reply. Mahon did file a brief and in it argued that the Court

had jurisdiction to determine his entitlement to a refund of payments made on account of 2002 taxes, at

least where the same would be used only to offset tax claims for tax years that the IRS's proof of claim

directly places in issue.  The IRS filed a reply brief.

On June 2, 2015, the Court entered an order that overruled the Objection only insofar as it

challenged the secured status of the IRS claim and indicated that the Court would schedule an

evidentiary hearing with respect to the remaining grounds of objection. Regarding the 2002

Overpayments Count, the Court stated:

> The parties have different positions on many of the relevant facts, and there
> is little point in the Court's pronouncing on the law without understanding
> precisely the facts that frame the issue or issues of law under § 505(a)(2)(B).
> Therefore, the Court will establish a discovery deadline and schedule an
> evidentiary hearing; in the evidentiary hearing, the parties will be expected
> to address both the merits and the limitation on authority presented by
> § 505(a)(2)(B). The Court will address first the IRS's arguments under
> § 505(a)(2)(B) and then, only if appropriate, proceed to consider the Debtor's
> arguments as to the monies first applied to satisfaction of the 2002
> additional assessment.

In addition, the Court observed that it had become unclear whether Mahon was asking the

Court for an order requiring the IRS to remit monies to him (over and above those the Debtor would

have the Court credit in satisfaction of tax debt that is the subject of the IRS's claim). The Debtor clearly

demanded such a remittance in its objection to claim, but in the brief he filed on February 6, 2015, he

stated, "The Debtor will not be receiving a refund directly nor will the Service be holding funds to apply

to future tax years."  The Court stated: "A proceeding to recover money is an adversary proceeding, Fed.

R. Bankr. P. 7001(1), and I do not understand the IRS to have waived the procedure that would be

3

afforded by the rules of Part VII of Federal Rules of Bankruptcy Procedure.  The Court will not entertain a demand for such a remittance without an adversary complaint." The Court therefore established June 19, 2015, as the deadline for filing any such adversary complaint. Upon Mahon's request, the Court extended the deadline to June 26, 2015.

On July 2, 2015, Mahon filed an adversary complaint against the IRS ("the Complaint"). The complaint essentially restates those facts alleged in his Objection regarding the IRS's alleged failure to give him credit for payments and other credits on his 2002 taxes that became surplus when his 2002 assessment was abated, and it asks that the same be offset against amounts due for the tax years at issue in the IRS's amended claim and, to the extent of any surplus, be remitted to him.[2] The IRS filed an answer, taking the same position on the merits as it did in response to the Objection. On the basis of § 505(a)(2)(B) and 26 U.S.C. §§ 7422(a) and 6511(a), the IRS also denied both that the Court has jurisdiction over the complaint and that the same is a core proceeding within the meaning of 28 U.S.C. § 157(b). After a joint status conference on the Objection and the Complaint, the Court then consolidated these for evidentiary hearing and trial, established a deadline for completion of discovery, and scheduled the evidentiary hearing/trial for November 19, 2015.[3]

On November 2, 2015, the IRS filed a motion for summary judgment in the bankruptcy case as to the Objection and another in the adversary proceeding as to the Complaint. The motions and briefs in support of the two motions are identical.  In both, the IRS challenges two of the remaining three grounds of objection. Regarding Mahon's objection on the basis of failure to give him credit for 2002 overpayments, the IRS seeks summary judgment on the basis that there is no evidence to support Mahon's allegation that he has an overpayment credit for the 2002 income tax year for which he has not

---

[2] The Complaint sets forth three numbered counts but in substance only one count. Count III is based on the same facts as Count I and seeks the same relief as Count I. Count II demands no relief. Entitled "Failure to Process 2008 Amended Income Tax Return," it states only (and inexplicably) "Reserved by the Court to decide at a later date."
[3] In view of the present motions, the trial/evidentiary hearing has been continued generally.

already been given credit. The IRS also incorporates by reference its argument that it is entitled to judgment on this count for lack of jurisdiction. By its motion for summary judgment, the IRS thus seeks summary judgment on the 2002 Overpayment Count (and on Count I of the Complaint, the two being virtually identical) both on its merits and for lack of jurisdiction.

And regarding Mahon's contention that $17,546.00 of a withholding credit for 2008 that the IRS applied pre-petition to satisfy his 2004 income tax debt should be reapplied in full to his 2008 taxes, the IRS seeks summary judgment by arguing that it properly applied part of Mahon's 2008 income tax withholding credit toward his 2004 income tax liability, and the Court has no authority to order the reapplication of the credit.

With respect to each of the IRS's motions for summary judgment, Mahon filed an opposition and, in the same document, a cross-motion for partial summary judgment (the "Opposition/Cross-Motion"). The Opposition/Cross-Motion that Mahon filed as to the Objection is identical to the one he filed as to the Complaint.  In the Opposition/Cross-Motion, Mahon now concedes (on the basis of facts learned in discovery) that "some tax is due," and therefore, though he continues to challenge the IRS's claim as overstated and unsubstantiated, he no longer seeks remittance of funds.

The document is entitled (in part) "Cross-motion for Summary Judgment as to Counts I through III," meaning Counts I through III of the Complaint,[4] but in substance it demands summary judgment only as to Count I. Count II, entitled "Failure to Process 2008 Amended Income Tax Return," has no content and therefore is no count at all. And Count III states no facts and demands no relief not already stated and demanded in Count I.

With Respect to the 2002 Overpayment Count of the Objection and Count I of the Complaint, Mahon argues that the IRS is not entitled to summary judgment because the IRS's own records show, and are uncontroverted in showing, that Mahon made payments on his 2002 taxes totaling $46,974.60

---

[4] The Objection does not contain numbered counts.

in excess of the taxes owed for that period after abatement, and that only $6,164.60 thereof has been credited toward his obligations for later years, leaving unapplied credits totaling $40,810.00.  For the same reason, Mahon contends that he is entitled to summary judgment to the extent of $40,810 on Count I of the Complaint.

With respect to the 2008 Credit Count of the Objection, Mahon has articulated no opposition to the IRS's demand for summary judgment.

With respect to the 2008 Abatement Count of the Objection, Mahon argues that the IRS's failure to process his amended return for 2008 constitutes bad faith, and the Court should therefore disallow so much of the IRS's claim for 2008 as would be abated if the amended returned were processed, which Mahon quantifies as approximately $32,746. Mahon has not expressly moved for summary judgment as to the 2008 Abatement Count, but the IRS has responded as if he has.

In the Opposition/Cross-Motion, Mahon also articulates for the first time two new arguments for disallowing parts of the IRS's amended proof of claim:  that the tax for 2006 is based in part on an assessment of $92,182 for that year that, Mahon contends, "has heretofore not been adequately explained"; and, likewise, that the tax for 2008 is based in part on an assessment of $37,473 that has not been adequately explained. The immediate purpose of these arguments, too, is unclear, because neither Mahon nor the IRS has moved for summary judgment as to either. Mahon has not even amended his Objection to assert these new grounds.

**JURISDICTION**

The Court's jurisdictional concerns fall into three categories:  whether each count at issue falls within the bankruptcy jurisdiction given in the first instance to the district court in 28 U.S.C. § 1334(b) and assigned by the district court to the bankruptcy court for this district pursuant to 28 U.S.C. 157(a); whether each such count is a core proceeding, one as to which a bankruptcy court has authority under 28 U.S.C. § 157(b) to enter a final order or judgment; and, with respect to the 2002 Overpayment Count

6

and the virtually identical demands for relief in the Complaint, whether, as the IRS contends, 11 U.S.C. § 505(a)(1)(B) nonetheless prohibits the court from adjudicating the matter.

The four motions for summary judgment place at issue two counts of Mahon's objection to the IRS's claim—the 2002 Overpayment Count and the 2008 Credit Count—and Count I of Mahon's complaint against the IRS, which is in substance identical to the Overpayment Count.  The IRS's claim against the estate and Mahon's objection to it arise under the Bankruptcy Code, see 11 U.S.C. §§ 501 and 502 (governing the filing and allowance of proofs of claim), and in a bankruptcy case and therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by a standing order of reference (codified in the district court's local rules at L.R. 201, D. Mass.), referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). The objection to claim is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2)(B) (core proceedings include allowance or disallowance of claims against the estate). The bankruptcy court accordingly has authority to enter final judgment on each count at issue.

Mahon's 2002 Overpayment Count, though in form a counterclaim against the IRS, is asserted here only as an affirmative defense in the nature of setoff or payment against the IRS's claim.[5] The counterclaim does not arise under the Bankruptcy Code but is undisputedly related to this bankruptcy case because, if successful, it would reduce the allowable amount of the IRS's claim. It therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).  28 U.S.C. § 1334(b) (giving district courts original jurisdiction of all civil proceedings "related to cases under title 11"); *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984) ("related to" jurisdiction extends to any matter that conceivably may have an effect on the estate in bankruptcy). Even as a counterclaim (and not merely as an objection to claim), it is by statutory

---

[5] Mahon has indicated that he no longer believes he is entitled to a refund in excess of the amount needed to fully abate the taxes that form the basis for the IRS's claim. Therefore, he no longer seeks a money judgment for any such excess.

designation a core proceeding.  28 U.S.C. § 157(b)(2)(C) (core proceedings include "counterclaims by the

estate against persons filing claims against the estate"). The same statute authorizes a bankruptcy court

to hear, determine, and enter judgment as to a core proceeding.  28 U.S.C. § 157(b)(1). The Supreme

Court has determined that this authorization is unconstitutional and that a bankruptcy court, as a non-

Article III tribunal, may not enter a final judgment as to a counterclaim *unless* the action at issue "would

necessarily be resolved in the claims allowance process." *Stern v. Marshall*, __ U.S. __, 131 S.Ct. 2594,

2618 (2011). In this instance, the same claim that constitutes the counterclaim also constitutes a basis of

Mahon's objection to claim. In order to resolve the objection to claim, the court must adjudicate

Mahon's 2002 Overpayment Count—to determine whether, and in what amount, it gives rise to credits

that Mahon may setoff against, or apply to, the tax liability that forms the basis of the IRS's claim.

Accordingly, this is an instance in which the counterclaim would necessarily be resolved in the claims

allowance process, and therefore *Stern* does not invalidate § 157(b)(1) as to this counterclaim.

Therefore, even when the 2002 Overpayment Count is viewed as a counterclaim and not merely an

objection to claim, the Court may therefore enter final judgment as to it.

This leaves only the IRS's contention that 11 U.S.C. § 505(a)(1)(B) nonetheless prohibits the

Court from adjudicating the 2002 Overpayment Count.[6] Section 505(a)(1)(B) is an exception to the

general rule articulated in § 505(a)(1), which states:

> Except as provided in paragraph (2) of this subsection, the court may
> determine the amount or legality of any tax, any fine or penalty relating to a
> tax, or any addition to tax, whether or not previously assessed, whether or not
> paid, and whether or not contested before and adjudicated by a judicial or
> administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1). This is a broad grant of authority to determine taxes and related fines, penalties,

and additions to taxes. The IRS relies on the exception in paragraph (a)(2)(B):

> The court may not so determine— . . .

---

[6] The IRS does not contend that § 505(a)(1)(B) deprives the Court of authority to adjudicate the Objection's other
counts. I am satisfied that it does not limit the Court's jurisdiction over the remainder of the Objection.

> (B) any right of the estate to a tax refund, before the earlier of—
>> (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
>> (ii) a determination by such governmental unit of such request[.]

11 U.S.C. § 505(a)(2)(B).  This language creates an exception for determination of tax refunds.  Implicit in this exception is the assumption that the determination of a tax refund within its purview involves the determination of a tax, fine or penalty relating to a tax, or addition to tax—of something that § 505(a)(1) would otherwise authorize the court to determine. This is clear from the beginning phrase of § 505(a)(1), which refers to paragraph (2) as an exception ("Except as provided in paragraph (2), . . . "), and from the beginning words of paragraph (2) itself, "The Court may not *so* determine," § 505(b)(2) (emphasis added), the word "so" being a reference back to what paragraph (1) authorizes. It follows that when the determination of a tax refund does not require the determination of a tax, a fine or penalty relating to a tax, or an addition to tax, the exception in § 505(a)(2)(B) simply does not apply.

At least as now presented on the motions for summary judgment before the Court, the 2002 Overpayment Count does not require the Court to determine a tax, a fine or penalty relating to a tax, or an addition to tax. The Debtor simply contends that he made payments for 2002 taxes in excess of the finally determined amount of those taxes, leaving a credit balance for 2002 that may and should be applied to his liability for later years. This argument does not require the Court to determine the amount or legality of any tax; it requires only that the Court make a finding as to what the IRS determined the tax to be.  I therefore conclude that 11 U.S.C. § 505(a)(1)(B) does not apply to the 2002 issue now before me.[7]

I do not understand the IRS to have argued that sovereign immunity bars the Court from considering whether payments first applied to 2002 obligations may and should now be applied to taxes

---

[7] Mahon's objections and arguments have evolved since he first filed his exhibit. I do not state that he did not earlier give cause to believe he was challenging the 2002 assessment. I only state that at present Mahon does not challenge the 2002 assessment or ask for a determination of his tax obligations for 2002.

presently in controversy, but the IRS has cited sovereign immunity as informing other statutory

provisions that the IRS has argued should guide the Court's understanding of § 505(a)(1)(B). To be clear,

I do not understand sovereign immunity to bar the consideration of that issue. Claims, objections to

claims, and the allowance and disallowance of claims are governed by 11 U.S.C. § 502. Section 502 is one

of the sections of the Bankruptcy Code as to which, in § 106, the Bankruptcy Code has expressly

abrogated sovereign immunity. 11 U.S.C. § 106(a)(1) ("Notwithstanding an assertion of sovereign

immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this

section with respect to the following: (1) Section[] . . . 502 . . . of this title."). Section 106 goes on to

state: "The court may hear and determine any issue arising with respect to the application of such

sections to governmental units." 11 U.S.C. § 106(a)(2). And: "Notwithstanding any assertion of sovereign

immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit

any claim against such governmental unit that is property of the estate." 11 U.S.C. § 106(c). I am

satisfied that sovereign immunity is no impediment to consideration of the 2002 Overpayment Count.

**DISCUSSION**

**a.      Standards and Burdens**

      **i.      Summary Judgment**

Summary judgment is appropriate when there is no genuine issue of material fact and, on the

uncontroverted facts, the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56,

made applicable by Fed. R. Bankr. P. 7056; *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st

Cir. 1994).  Where the burden of proof at trial would fall on the party seeking summary judgment, that

party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers

to interrogatories, and the like—as to each essential element of its cause of action.  The evidence must

be such as would permit the movant at trial to withstand a motion for directed verdict under Fed. R. Civ.

P. 50(a).  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Provided it does so, the burden then

shifts to the opposing party to adduce evidence that establishes a genuine issue of material fact as to at least one essential element of the moving party's case.  The Court must view all evidence in the light most favorable to the nonmoving party and indulge all inferences favorable to that party.  *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988). The ultimate burden of proving the absence of a genuine issue of material fact remains at all times on the moving party.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Martinez-Rodriguez v. Guevara*, 597 F.3d 414, 419 (1st Cir. 2010), quoting from *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the moving party would not bear the burden of proof at trial, the movant's initial burden is simply to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  The burden then shifts to the opposing party to adduce such evidence on each of the disputed elements as at trial would be sufficient to withstand a motion for directed verdict. *Anderson v Liberty Lobby, Inc.*, *supra*.

With respect to issues upon which there are cross-motions for summary judgment, each cross-motion must be decided on its own merits, though the court need not consider each in a vacuum.  *See Puerto Rico American Ins. Co. v. Rivera-Vazquez*, 603 F.3d 125, 133 (1st Cir. 2010).

**ii.     Proof of Claim**

A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); see also *Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993). In order to rebut this prima facie evidence, the objecting party must produce "substantial evidence." *United States v. Clifford (In re Clifford)*, 255 B.R. 258, 262 (D. Mass.2000), citing *Hemingway Transport*, 993 F.2d at 925. If the objecting party produces substantial evidence and thereby rebuts the prima facie evidence, the burden is restored to the party on whom it would lie outside of bankruptcy.

"[T]he burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to

the burden of proof that normally comes with it." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20,

120 S.Ct. 1951, 1955 (2000). "[T]he [Bankruptcy] Code makes no provision for altering the burden on a

tax claim, and its silence says that no change was intended." *Id.*, 530 U.S. at 21, 120 S.Ct. at 1956.  Also,

where the objecting party's challenge goes not to an intrinsic element of the claim but is an affirmative

defense, the objecting party bears not just the initial burden of adducing substantial evidence but the

ultimate burden of proof as to the defense.

**b.    IRS's Motions as to 2002 Overpayment Count and Count I**

The motion for summary judgment that the IRS filed in the bankruptcy case seeks summary

judgment as to the 2002 Overpayment Count in the Debtor's Objection to the IRS's Amended Claim, and

the motion for summary judgment that the IRS filed in the adversary proceeding seeks summary

judgment as to Count I of the adversary complaint, which in every material respect is identical to the

2002 Overpayment Count. As the motions are also identical, together they require only a single analysis.

The gist of the 2002 Overpayment Count is that, on account of the IRS's abatement of taxes,

interest, and penalties it had earlier assessed for tax year 2002, payments that had been applied to

satisfy the 2002 obligations were no longer needed for that year and should have, but as yet have not,

been reapplied to later tax years. The Debtor contends that these excess payments constitute a credit,

in an amount to be determined, that should abate some or all of the tax asserted in the IRS's amended

proof of claim. As articulated in the Debtor's Objection, this count supplied virtually no details as to the

amounts, payments, assessments, abatements, etc. in issue.

Regarding this count, the IRS seeks summary judgment on the basis that there is no evidence to

support Mahon's allegation that he has an overpayment credit for the 2002 tax year for which he has

not already been given credit; and, to the contrary, the uncontroverted evidence shows that, after

abatement, the payments that had been applied to 2002 exceeded the remaining taxes, interest, and

penalties for that year by only $6,164.60, which sum was, on August 25, 2010 (but effective as of the

date the payment in question was made, February 13, 2006), credited against the balance then due for

the 2004 tax year. The Debtor responds, saying that the same records that the IRS adduces in support of

its motion—consisting principally of its Non-Master File Transcript for Mahon for tax year 2002—when

properly construed, show that his payments for 2002 exceeded the tax after abatement by $46,974.60,

for which he is entitled to additional credit of $40,810.

The 2002 Overpayment Count is in essence an affirmative defense, either of payment or of

setoff: that the tax obligations that are asserted in the IRS's proof of claim have been paid; or in the

alternative, that he is entitled to a refund for 2002, which refund he may setoff against amounts due for

later tax years.  Outside of bankruptcy, it is clear that the burden of proof on this defense would fall on

the taxpayer. "In all tax suits, the Internal Revenue Commissioner's deficiency determination 'is

presumed correct, and . . . the taxpayer bears the burden of proof and persuasion to show otherwise.'"

*United States v. Berk*, 374 B.R. 385, 391 (D. Mass. 2007) (quoting *Lefebvre v. Comm'r*, 830 F.2d 417, 419

n.3 (1st Cir. 1987)); see also *United States v. Rexach*, 482 F.2d 10, 17 (1st Cir. 1973) ("[I]n tax collection

suits or on government counterclaims, as in tax deficiency or refund suits, the burdens of both going

forward and ultimate persuasion are on the taxpayer."). Even if this were not tax litigation against the

IRS, Mahon would bear the ultimate burden of proof for the simple reason that payment and setoff are

*affirmative* defenses. Therefore, Mahon bears not only the initial burden of adducing substantial

evidence to overcome the prima facie validity of the IRS's claim, but also the ultimate burden of proving

that he has made payments on his 2002 obligations of more than $6,164.60 in excess of the taxes,

interest, and penalties remaining for that year after abatement.

On summary judgment, the Court makes no findings of fact but simply determines whether

Mahon has shown that there exists a genuine issue on each of the essential elements of his claim. The

elements here are simple: he must show that payments made or applied to tax year 2002 exceed the

assessed tax (including penalties and interest) for that year, after abatement, by more than $6,146.00.

To satisfy this burden, Mahon relies entirely on evidence adduced by the IRS. In support of his

opposition, he has adduced no separate evidence of his own. The evidence adduced by the IRS consists

of the IRS's Master File Transcript for Mahon and his then-wife, Ann Mahon, for 2002; the IRS's Non-

Master File Transcript for Mahon for 2002; and the deposition testimony of IRS Employee Bonnie

Fitchett. Except as otherwise indicated, the following facts are uncontroverted.

On or about April 15, 2003, Mahon and his then-wife, Ann Mahon, filed a joint federal income

tax return for the 2002 tax year, as reflected on the IRS's so-called master file transcript for their 2002

tax year. The return reported that Mahon's and his wife's joint tax for 2002 was in the amount of

$38,389.00.  On June 6, 2003, the IRS accordingly made an assessment against the Mahons for the 2002

income tax year in this amount. In payment of this obligation, the Mahons had applied a credit from a

prior tax period in the amount of $10,110, and had made three estimated tax payments, each also in the

amount of $10,110, and had paid tax through withholding of an additional $904, for total payments

through April 15, 2003 on the 2002 taxes of $41,344.  This overpaid the reported 2002 tax by $2,955.

Accordingly, as shown on the 2002 master file transcript, on or effective April 15, 2003, the Mahons

elected to have this sum applied to their next year's taxes. In journal form, the accounting for this period

is as follows:

| TAX YEAR 2002: ACTIVITY THROUGH 2003 | | | | |
|---|---|---|---|---|
| Date | Item | Debit | Credit | Balance |
| 4/15/2002 | Credit transfer from prior tax period | | 10,110.00 | 10,110.00 |
| 6/19/2002 | Estimated tax payment | | 10,110.00 | 20,220.00 |
| 9/22/2002 | Estimated tax payment | | 10,110.00 | 30,330.00 |
| 1/3/2003 | Estimated tax payment | | 10,110.00 | 40,440.00 |
| 4/15/2003 | Withholding credit | | 904.00 | 41,344.00 |
| 4/15/2003 | Amount Mahons elected to apply to 2003 taxes | 2,955.00 | | 38,389.00 |
| 6/9/2003 | Tax assessed per return | 38,389.00 | | 0.00 |

Accordingly, as of the date on which the IRS processed their 2002 return, the Mahons' assessed 2002 tax

had been fully paid, and they had no unapplied credit for 2002, their excess payments having already

been applied to their 2003 tax. They owed no assessed tax and were due no refund.

This did not last. On May 30, 2005, the IRS made additional assessments against the Mahons for

the 2002 tax year of income tax in the amount of $157,882.00, penalties of $25,114.00, and interest of

$19,984.35. On February 10 and 13, 2006, Mahon made payments of $27,769.55 and $19,205.05

respectively, which payments the IRS applied to his and his wife's joint 2002 obligations. On July 10,

2006, the IRS abated prior tax in the amount of $32,285.00. And on December 4, 2006, the IRS made

further assessments against the Mahons for the 2002 tax year of penalties of $15,398.06 and interest of

$11,566.13. The assessments listed in this paragraph totaled $229,944.54.  After subtraction of the

payments and abatement listed in this paragraph, the Mahons owed a balance of $150,684.94.

In journal form, the accounting for this activity in 2005 and 2006 is as follows:

| TAX YEAR 2002: ACTIVITY IN 2005-2006 | | | | |
|---|---|---|---|---|
| Date | Item | Debit | Credit | Balance |
| | Starting balance | | | 0.00 |
| 5/30/2005 | Additional tax assessed | 157,882.00 | | (157,882.00) |
| 5/30/2005 | Interest charged for late payment | 19,984.35 | | (177,866.35) |
| 5/30/2005 | Miscellaneous penalty assessed | 25,114.00 | | (202,980.35) |
| 2/10/2006 | Payment | | 19,205.05 | (183,775.30) |
| 2/13/2006 | Payment | | 27,769.55 | (156,005.75) |
| 7/10/2006 | Prior tax abated | | 32,285.00 | (123,720.75) |
| 12/4/2006 | Penalty assessed for late payment | 15,398.06 | | (139,118.81) |
| 12/4/2006 | Interest charged for late payment | 11,566.13 | | (150,684.94) |

In 2003, the Mahons filed a joint petition for divorce. In February 2006, in the wake of the 2005

assessments, Ann Mahon requested innocent-spouse relief from the IRS with respect to her and

Mahon's joint and several 2002 income tax liability, and the IRS eventually granted that request. This

caused the IRS to have to account for the Mahons' 2002 liability in two, separate individual files rather

than the one joint file. Accordingly, on February 27, 2007, the IRS replaced the Mahons' master file for

2002, which was a joint file, with a "non-master file" for Mahon's individual liability for 2002 ("the NMF

Transcript").[8] This entailed zeroing-out the 2002 Master File Transcript and, at the same time,

transferring each debit and credit from the 2002 Master File Transcript that pertained to Mahon—

apparently, all of them—to Mahon's NMF Transcript. Therefore, upon its creation on February 27, 2007,

Mahon's NMF Transcript contained, in chronological order, each item listed in the two tables above.

At some point, Mahon, through his accountant, contested the IRS's additional assessment of

$157,882.00 in tax for the 2002 tax year. (The procedural form of this contest is unclear.) The contest

eventually bore fruit. Entries posted on Mahon's NMF Transcript on August 4, 2010 show that on July

30, 2010, the IRS abated prior tax of $84,787.00, miscellaneous penalty of $25,114.00, "FTP Penalty" of

$15,398.06, and interest of $31,558.48. This constituted full abatement of all penalties and interest that

had been assessed in 2005 and 2006 and a partial abatement of the remaining tax that was assessed in

that period, leaving only $40,810.00 of that assessment in place.[9]  Because Mahon had made two

payments in 2006, totaling $46,974.60, the abatements left the account with a credit balance of

$6,164.60, which, on August 25, 2010, the IRS applied to Mahon's then-remaining obligation for tax year

2004.  In its final entry, the NMF Transcript reflects this transfer, effective as of February 13, 2006, the

date of the last payment, the source of the transferred credit. The NMF Transcript also indicates that the

account balance as of August 25, 2010, was $0.00.  In journal form, the accounting for this activity in

2010 is as follows:

| TAX YEAR 2002: ACTIVITY IN 2010 | | | | |
|---|---|---|---|---|
| Date | Item | Debit | Credit | Balance |
| | Starting balance (from 12/4/2006) | | | (150,684.94) |
| 7/30/2010 | Prior tax abated | | 84,787.00 | (65,897.94) |
| 7/30/2010 | Interest abated | | 31,550.48 | (34,347.46) |
| 7/30/2010 | Miscellaneous penalty abated | | 25,114.00 | (9,233.46) |
| 7/30/2010 | FTP penalty abated | | 15,398.06 | 6,164.60 |
| 8/25/2010 | Credit transferred to 2004 | 6,164.60 | | 0.00 |

---

[8] It is unclear, and also irrelevant to this proceeding, whether the IRS also created a non-master file for Ann Mahon.

[9] On May 30, 2005, additional tax was assessed of $157,882.00. On July 10, 2006, $32,285.00 was abated, leaving a balance of $125,597. The further abatement of $84,787.00 on July 30, 2010 reduced the tax assessed in 2005 to $40,810.00.

Mahon expresses no disagreement with any item in the above accounting, from 2002 through

2010, yet continues to maintain that he is entitled to a further overpayment credit in the amount of

$40,810. This is the amount of the 2005 tax assessment that remained after the abatements of July 10,

2006 and July 30, 2010. Mahon states that IRS itself alleges that the 2005 assessment was abated not

partially but fully. If there is evidence that the IRS fully abated the 2005 tax assessment, it would be at

odds with the accounting set forth above, which is taken from the Mahons' master file transcript and

Mahon's NMF Transcript for 2002, and would create a genuine issue of material fact. Mahon, however,

points to nothing in the record to support this proposition.[10] Moreover, in his response to the IRS's

motions for summary judgment, he admitted that the 2010 abatements were in the amounts set forth

above, and that they abated "a *portion of* the debtor's 2002 income tax, plus interest and penalties."[11]

Mahon having neither adduced nor cited evidence of any kind that would place in controversy any

element of the above accounting, I conclude that there is no genuine issue of material fact and that the

IRS is entitled to judgment as a matter of law with respect to the 2002 Overpayment Count of Mahon's

Objection and to Count I of the complaint.

**c.       Mahon's Cross-Motion for Summary Judgment as to 2002 Overpayment Count and Count I**

By his motions for summary judgment, Mahon seeks summary judgment as to the 2002

Overpayment Count and Count I of the complaint. Mahon's burden on this motion is to adduce evidence

as to each element of its cause of action from which a reasonable finder of fact could find that the IRS's

---

[10] He cites generally to Exhibit 6, which is the NMF Transcript, and to the deposition of Bonnie Fitchett, but not to
any specific part of either document. The NMF Transcript shows nothing at odds with the above accounting. Ms.
Fitchett worked for the IRS's Taxpayer Advocate Service on Mahon's behalf with respect to his attempt to obtain
an abatement of the 5/30/2005 additional tax assessment of $157,882. At pages 100-101, she testified that the
assessment of $157,882 was, through her intervention, only partially abated. It was reduced by $84,787.00. This
was in addition to the earlier abatement of $32,285, on which she had not worked. This was consistent with her
further testimony at pp. 111-12.  Later, at p. 120, she also testified: "Q. And other than the $6,164.60, is there
anything that you've seen in the files you've reviewed showing that there was any credit balance for Mr. Mahon's
2002 income taxes that should have or could have been applied elsewhere? A. No, the only credit was the
$6,164.60." Nothing in Ms. Fitchett's deposition controverts the above accounting; her testimony about it is
entirely consistent.
[11] Response to IRS's Statement of Material Facts, ¶28.

abatements of his 2002 assessments entitled him to a larger credit than the $6,164.60 that the IRS has

already recognized. For the reasons set forth above in the discussion of the IRS's motion as to these

counts, Mahon has failed to sustain that burden. To the contrary, I have determined that the IRS, not

Mahon, is entitled to judgment as a matter of law on these counts. Mahon's cross-motion for summary

judgment must accordingly be denied as to the 2002 Overpayment Count and Count I.

**d.**     **IRS's Motion as to 2008 Credit Count**

In the 2008 Credit Count, Mahon contends that $17,546.00 of a withholding credit for 2008 that

the IRS applied to satisfy his 2004 income tax debt should be reapplied in full to the balance due for his

2008 taxes.[12] The IRS seeks summary judgment as to this count by arguing that it acted properly when it

applied part of Mahon's 2008 income tax withholding credit toward his 2004 income tax liability, and

that the Court has no authority to order the reapplication of the credit.

The material facts are few and uncontroverted. For the 2008 income tax year, and based on

Mahon's late-filed return for that year, the IRS made an initial tax assessment against Mahon in the

amount of $19,782.00. Because Mahon had a withholding credit of $37,328.00 for that year, the

account initially showed an overpayment credit of $17,546.00. The IRS applied this credit toward

Mahon's then-outstanding balance for the 2004 income tax year. After making the initial tax assessment

for the 2008 tax year and applying the initial overpayment toward the 2004 liability, the IRS determined

that Mahon had underreported his tax for 2008 by the amount of $37,473.00.[13] On May 2, 2011, the IRS

accordingly assessed additional income tax for 2008 in the amount of $37,473.00, plus penalties and

---

[12] The IRS states that "[s]uch reapplication would revive a 2004 liability in the same amount, but that liability would be unsecured, and thus reapplication would harm the IRS," and the Debtor appears to agree. I make no determination of the potential effect of the requested reapplication. No party suggests that the effect of reapplying (or not) the overpayment is relevant to the disposition of this count.

[13] Mahon denies that he underreported his income or tax for 2008, but that dispute is irrelevant to *this* count. It is uncontroverted that the IRS *determined* that he had underreported his tax.

interest. The portion of the IRS's amended proof of claim that is for the 2008 tax year, a total of

$63,537.43, is based entirely on this assessment.

Mahon does not expressly contend that the IRS's application of the 2008 overpayment to taxes

then owing for 2004 was wrongful.  He offers no basis for such a determination. And he cites no basis, in

the Bankruptcy Code or elsewhere, on which he might now be entitled to an order reapplying the

payments to later-assessed taxes for 2008. Indeed, his response to the IRS's motions for summary

judgment includes no response at all with respect to this count.

As the IRS correctly contends, the IRS has authority under § 6402(a) of the Internal Revenue

Code to credit a taxpayer's overpayment "against any liability in respect of an internal revenue tax on

the part of the person who made the overpayment." 26 U.S.C. § 6402(a) ("In the case of any

overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such

overpayment, including any interest allowed thereon, against any liability in respect of an internal

revenue tax on the part of the person who made the overpayment[.]"). I conclude that there are no

genuine issues of material fact as to this count and that the IRS is entitled to judgment on it as a matter

of law, overruling this basis of objection to its amended claim.

**e.      Mahon's Motion as to 2008 Abatement Count**

Mahon seeks summary judgment as to his 2008 Abatement Count, in which he argues that he is

entitled to an abatement of so much of the tax assessed for tax year 2008 as would be abated if an

amended return that he has filed as to that year were duly processed. By this particular objection to the

IRS's claim for 2008, Mahon essentially argues that the 2008 tax should be abated because the IRS is

obligated to process his amended return and to adjust the total 2008 assessment to conform to the

amended return. Though Mahon's demand for summary judgment as to this count was only implicit, not

expressly articulated, the IRS nonetheless clearly understood Mahon to be seeking summary judgment

as to this count and responded accordingly.

19

Mahon's motion for summary judgment must be denied because, in support of it, Mahon has adduced no authority for his contention that the IRS is obligated to process an amended return and to adjust the assessment accordingly. He argues that it constitutes bad faith for the IRS not to have processed the amended return, but this only begs the question: in order to show that it constitutes bad faith not to process a return and to adjust his assessment accordingly, Mahon must establish that the IRS is obligated to do these things. For that Mahon still has cited no authority. Neither has the IRS cited authority to the contrary, but it is the burden of the party moving for summary judgment to adduce authority establishing that it is entitled to judgment as a matter of law. With no briefing on the applicable law, I will not decide the issue at this time. Mahon having failed to establish that he is entitled to judgment as a matter of law, his motion for summary judgment will be denied as to the 2008 Abatement Count.

f.      **Mahon's Arguments as to Unexplained Assessments in 2006 and 2008**

In his motion for summary judgment, Mahon makes arguments in support of objections to the IRS's amended claim that he has not yet made. Specifically, he argues that the IRS's claims for tax years 2006 and 2008 should be disallowed because they are based on assessments—of $92,182 for 2006 and $37,473 for 2008—that "ha[ve] heretofore not been adequately explained." He complains that he cannot challenge an assessment if he does not know why it was assessed, and that, despite inquiry and discovery requests, the IRS has been unable to produce any document or record that states the reasons for these assessments. I need not address this argument because (i) as the IRS correctly points out, it is not among the grounds on which Mahon has objected to the IRS's claim[14] and (ii) though Mahon included these arguments in his Opposition/Cross-Motion, he did not ask in that document for summary judgment as to these particular grounds of objection.[15]

---

[14] Mahon has not moved to amend his Objection.

[15] Nonetheless, I point out that the IRS, in its reply brief (at pp. 12-15), has now articulated why the 2006 and 2008 assessments were made. For tax years 2006 and 2008, the IRS made assessments of additional tax against

**CONCLUSION**

For the reasons set forth above, a separate order will enter allowing the IRS's Motions for

Summary Judgment as to the 2002 Overpayment Count, Count I of the complaint, and the 2008 Credit

Count and denying the Debtor's Cross-Motions for Summary Judgment. Of the grounds of objection

that Mahon asserted in his Objection, only the 2008 Abatement Count remains unresolved. As to it, the

Court will schedule an evidentiary hearing.


Date: February 14, 2017

_____
Frank J. Bailey
United States Bankruptcy Judge

---

Mahon—taxes in addition to that which he had reported in the returns he filed for those years—because he had sold securities in those years and not reported those sales in his tax returns. When the IRS learned independently of the sales, it assessed additional tax (plus interest and penalties), and the amount of tax so assessed was based on the assumption that the sale proceeds were entirely gains. The IRS derives this information from the deposition testimony of Mahon's accountant, Wayne Krupsky, but is satisfied that it explains why the assessments were made. "It is clear enough what happened." (IRS's Reply Brief, p. 12)

Mahon has adduced the amended return he filed for tax year 2008. It includes a Schedule D on which he now discloses sales of UBS stock that yielded gross proceeds of $185,000. It also discloses what he claims was his basis for the shares in question, showing net losses of approximately $14,000 from the sales. The IRS says that Mahon has not substantiated his claimed losses to the IRS or provided the relevant Form 1099.